Case No. 12-0654, People v. Military Can we have the counsel who are going to present this morning approach the podium and identify yourselves for our benefit and for the record, please? My name is David Harris. I'm an assistant federal defender on behalf of the military. I'm the state attorney in that Commons on behalf of the people. Thank you. All right, so we'll start out with 15 minutes aside, and we'll pause and reserve time for a vote, if you wish. I'd like to reserve a few minutes for the vote. And we have eight issues in the brief. The states contain two of them. I will now use my brief time to try to touch on the first five issues in the brief, if I can get through them. And I'll get to start at the top and work my way through. Regarding the vehicular hijacking charge, this court's decision in McArthur is clear. Reese, under McArthur, did not commit a vehicle hijacking. The state asked this court to contravene its recent decision in McArthur, but it hasn't supplied any good reason to. It hasn't even found any case in the country interpreting some similar statute where facts like these led to a hijacking or carjacking. Well, didn't you cite some federal cases that actually went the other way? The federal cases in the brief actually involved dispossession. They dispossessed the driver. Both of them involved the defendants putting the drivers in the backseat. In one case, putting the driver in the backseat was dispossession. Yes. And the defendants said it was illegal to do that. Is there a difference between having the power arm in the front seat versus the backseat? Yes. The defendant is physically in control of the vehicle. He's driving it. He has assumed control of the car. The defendant was handcuffed in all those cases in the backseat. In another case, there were two victims. One was shot and the other was told to run from the car, which is even greater after dispossession. The defendant assumed physical control of the car, and that didn't happen in this case. That didn't happen in McArthur. In McArthur, the driver, the victim, eventually got out of the car to drive down the victim. In Ritz-Case v. De La Corte, didn't the defendant push the car owner out of the driver's seat and push him into the passenger seat and then take control of the car? In Ritz-Case v. De La Corte? De La Corte. I'm not familiar with De La Corte. I'm not familiar with the documenting. All right. In Ritz-Case v. De La Corte, the defendant was handcuffed in the backseat. Lebron Tepedo also pushed into the backseat. In Ritz-Case v. De La Corte, wasn't the car owner taken out of the driver's seat and turned around and ultimately killed? Didn't he lose control of the car while he was in the car? The victim? Yes. The Boletero. Yes. The Boletero case. The victim loses control of the car, and that didn't happen in this case. Well, you just told me there's a difference between being in the front seat and the back seat. No. Well, the case involves the staffing where the cases would have been in the back seat, but the important factor is losing control of the car. The defendant takes physical control of the car, and that did not happen in this case. There are cases where it's headed in a motion to file an additional 30. In one of the booklets, California Interpreting the Car Driving Statute, the defendant left himself between the driver and the steering wheel and stepped on the gas. The United States v. Garul, so you're saying that if the car owner is still driving, even though there's a knife in his head, and he's still in control of the car. Yes. So the United States v. Garul wasn't the car owner forced to drive at that point, and the Federal Circuit Court found that that was a taking. All right. That must be another case I have. But for those who don't know, I'll follow that up with the state. That was interpreting a different time, not the time created in Illinois. That's right. It is interpreting a federal statute. Which, in my opinion, is substantially different. In the federal statute, the actual offense includes the offense of attempt. Do you think that supports your position? The federal statute defines carjacking as with intent to cause death or serious bodily harm. Take a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so. Well, it certainly creates a much broader offense and encompasses a broader class of actions. Here, the legislature in Illinois has used taking a vehicle from a person. And that was using robbery. I don't know the history of the federal carjacking statute, and whether it was the same in Illinois. But in Illinois, there was just a robbery statute that included cars, and it required taking the property from the person or presence. That has been construed to require dispossession, even with cars, in Strickland. And the legislature then used the exact same language in the case of Harris. Okay. So, in the federal statute, you have this broader language. And, in fact, the federal robbery statute also includes the offense of attempt. But in Illinois, the legislature adopted virtually the identical language from the robbery statute that we have. Correct?  And in Strickland, the Supreme Court was interpreting what taking means under the language that was enacted by the legislature. Precisely. And in that case, I believe it involved a murder, but there was also a taking of a vehicle, in which the two defendants armed, forced these people to continue driving the car. And the court said that that was not a taking under the armed robbery statute. Right. How does it make a difference? The legislature then changed. They took the offense of taking a car while armed out of the armed robbery statute and then chose to create a new statute specifically directed at attacking the property. Not with the same exact thing. Why not? Because they were aware of how courts in Strickland, including Illinois Supreme Court in Strickland, the element of taking from a person or the person's presence, and they used that exact same language, taking from the person of presence. They removed the cars from robbery and created this new offense to impose higher sentences on taking of cars compared to taking the bed of property. What statutory principle is that that you're responding to? Well, there's a presumption that when the legislature is aware of the judicial construction of certain terminology and the legislature reuses that terminology, there's a presumption that they intend the meaning that courts have already given them. And that's exactly as to what one of the cases the state cited in their additional court says. They cited a dissent out of the California Supreme Court in Johnson where the dissent said you shouldn't look to the robbery statute to construe the element of from the presence of a person in a carjacking statute. The California Supreme Court explicitly rejected that and said we presume that when the legislature imposes words that have been judicially construed, it intends the words to have the meaning courts have given them. And that's exactly what we have here. They call it an irresistible presumption. And it was construed in Strickland. They've been creating a vehicle hijacking statute. It's been since construed in Carver. The legislature hasn't touched it. So the state's complaint here isn't with the courts, it's with the legislature. If they want this to be encompassed in vehicle hijacking, the statute has to be amended. Let me ask you a question about dispossession. So it's your position today, and I'm not in any way criticizing this, it's your position that you don't really need to remove the person from the car, but you do need to dispossess them of the control of the vehicle. So they could be in the car, they could be in the back seat, they could be in the front seat, but what you're saying is the line you see in our cases is one-space. Take physical control. I think someone who has offended in that case would be in possession of the vehicle, no matter who else enters the car, if they have someone in the trunk, if they have someone in the handcuffs in the back seat, if they have someone removed to the passenger seat, as they're no longer in physical control of the car. But what about Justice Palmer's question? I think it's a good one. If someone is pointing a gun at someone's head and tells them, drive, how could that not be the taking of custody or control over that vehicle because the person is now forced to drive the gun away? In Illinois under the language of the legislature used, that's not a taking of property. It's when you have no other cars. It's not vehicular hijacking because vehicular hijacking is law-construed. The language there on this is law-construed under the Robert statute. There's a document for the vehicular hijacking statute. How do you get out of the robbery statute, which deals with property other than vehicles, how do you get out of the robbery statute that there's a material difference between somebody being in the trunk versus somebody being in the driver's seat? Where does that come from, the robbery statute? You just told us there's a difference. It comes from the nature of the element of taking from a person. I think someone who would be in possession of a car wouldn't, if there are multiple people, at least friends driving a car, I think that no other driver of the car would be in possession. Someone who's driving alone wouldn't be in possession of the car. So you're saying that the state legislature intended that a person who was forced at gunpoint to drive his own car versus a person who was pushed into the passenger seat and held at gunpoint while the bad guy drives the car, that that's a significant difference, that one's a crime and one's not, or one's not this particular crime? I think that's certainly a logical line to draw, and I think if you want to argue that for the legislature to draw, that there's a difference between those two. I mean, if the court wants to go further and require the person to be thrown from the car, then that would be an element of possession where the person is completely out of the car, but there's an element to read this book that says that as long as the defendant happens to be in physical control of the car. If it's not the completion of the vehicular hijacking, isn't it certainly an attempt here? No, because if someone hijacking requires a taking, which the court said in the prior amendment, then there's no evidence that he wanted to, attempted to take, that he intended to take control of this bus as opposed to get a ride. Well, this is an attempt for robbery, an attempt on robbery. If somebody walks up to you with a gun and says, give me your purse, you're saying that wouldn't be an attempt on robbery? The person doesn't, you know, let's say they decide to fight it off. You're saying that's not an attempt on robbery? No, that wouldn't be an attempt on robbery. Then why wouldn't this equally result in an attempt here? He got on the bus, or whatever it was, and said something to the effect, drive. It was drive. There's no evidence in this case that he attempted to dispossess the person. He just forced them to give him a ride. So does that really enter into this calculation? No, because the evidence was just as insufficient for an attempt as it was for actual dispossession. So if he had to tell them, I'm going to take the car, is that what we need for a substantial theft to the commission of the offense? The reason he's coming at them is his intent to dispossess the driver of the vehicle, and there's none in this case. I don't know that I agree with you on that. Let me ask you this. Isn't the control of the vehicle the most important element? Yes, I mean physical control. Well, isn't that the issue? Who has control of the vehicle? Well, physical control of the vehicle would be ____. Where do you have the idea it has to be physical control? It comes to our mind from the car. In both of those cases, the defendant put a gun on the driver and told him to drive. And that will now have to be ____. In the car, did the court ever say it has to be physical control? The court said it just has to be dispossession. It could be more than physical control. It could be a justifiable suggestion of removing from the car. But even if it's as narrow as physical control, that's enough to show that Mr. Reese did not commit this crime. But it does require some form of dispossession, whether it's physical control or physical control plus removing the defendant. You know, the only decided case in this case exists. Justice Gordon and I were both on it. Although I was also on another case. But I don't think we mentioned any ____. I don't think we used language like that in the decision. No. Well, yeah. The language of dispossession is ____. We're not advocating for it today, of actually removing someone from the car. And Justice Gordon, I'm sure you're all aware, issued a defense in that case. But not on the issue of dispossession. Just that by pulling the victim and burning the car was the ultimate form of dispossession. And there's simply no evidence like that here. And there was no form of intent to do that. Well, you know, given that federal cases are not controlled and can be instructed, let me ask you what you think of this language. So in United States v. Garul, which is 461 F. 3rd, 1238, the defendant jumps in the car and forces the victim at knife point to drive into a freeway to let him out on a freeway. So there's no issue of attempting to take the car from the victim. It's just give me a ride and drive. And so the federal district court, I'm sorry, I keep saying that, the United States Court of Appeals of the Tenth Circuit says, it's under dispute that Garul unlawfully entered the home and forced Mrs. Gruffendorf at knife point to take him to a particular location. Gruffendorf did not voluntarily give a ride to Garul in her vehicle. And certainly, Garul, the defendant, was certainly in control of the situation. Thus, the record establishes that Garul acquired possession or control of the victim's vehicle in the presence of another. Is that faulty reasoning to you? Well, look, that's the fact that, as I said, there was no inalienable dispute with McCarter. But that's involving a different statute with a different legislative history. And so whether that reasoning is faulty or not will depend on what the legislature meant when they crafted that. How does the legislature view the statute? They didn't say any legislative history. They just said, based on the facts, the woman who has a knife to her neck isn't in control of the vehicle anymore and did not voluntarily give this person a ride to the freeway. I think as a part of the fair enough statute, that would be faulty reasoning. Fair enough statute clearly requires different possession as it was in the statute. In the statute, it's been judicially construed that taking from a person means dispossession, and the legislature reused that same language in the Harbeck statute after Strickland and didn't make any changes. So by using taking from a person, yes, it means dispossession. Well, in Strickland, you know, the Supreme Court did construe take, and they said while the defendant denied the victim a large measure of control over the vehicle, the defendant never removed the car from the victim's vehicle. And that's what Strickland says. And that is, you know, the Illinois Supreme Court determined take, whereas these other decisions are not interpreting Illinois law. And the driver here still maintains control of the car and stepped on the gas through the door and to bring it to a screeching halt. Now, before that, the incident, Mr. Reese also did not commit vehicle invasion, which requires an entry by force. He entered the bus that was parked in the parking lot with the doors open and waiting for passengers. He entered through the open doors. That doesn't show any sort of active force to get on the bus. What happens on the bus later does nothing to change the nature of his act of entry. And so he didn't enter by force. He entered through the open doors. I'm curious how he interprets that, because it doesn't matter how he entered the threshold of the bus. I don't hear the difference. I think that if there's any more issues, didn't he step up to the driver and put a knife? Yeah, he stepped up to the driver and put a knife. Okay. And the original statute doesn't say that he entered by force of threat. Threaten force or did he enter through the ease force? Threaten force. He said drive, according to Ronald's system, drive outside of your, in other words, let's say it was a passenger in the bus, that would be just, you know, drive. So that's a threat force or a threat force? That's a threat force. The statute doesn't say enter by force of threat force. Here, the legislature omitted the commentary about threat force and just said entry by force. When an entry is through an open bus door, what happens later doesn't perpetuate the entry. Is there some case that you really think would support this sort of narrow interpretation of force? Armed robbery case, armed robbery. I mean, is there any case really that you would have us rely on to get that interpretation? No, I haven't seen any case where somebody commits an entry and then, you know, subsequently uses force. Or, you know, just one of the cases, it's not that I want to get this, there are no cases for that kind of thing. Why don't you use the robbery interpretation to prevent that?  Because the legislature used that language. Right. And that comes from armed robbery is the robbery with a weapon, except for the, now we have the vehicle. And also requires force or threat of force in armed robbery. The force is still in there. And I think there are many cases that interpret this. Anywhere around this time, I can take something. I don't think... I think they used force once he entered the bus. He threatened the driver. And the driver drove around the parking lot. He used force, that's why the driver did what he did. He moved the bus, didn't he? Yes, due to the threat of force. He didn't apply force to the driver. He applied the threat of force to the driver. What did he do with the knife? He held it and according to the driver, said, Driver, I'll stab you. Okay. So you don't, you think that... I think it was a threat of force. There are most people who would say that if they had given up, it was because they were forced to, not because they were threatened. I think, typically, people would tell him, say, I was supposed to drive, but it was due to the threat and fear of potential force. And where vehicular invasion says, enter by force, and it does not say enter by force or threat of force, that's insufficient. All right. Why don't you tell us about the shackles to the jury syllage? Yes, absolutely. Mr. Reese was shackled during jurisprudence in other criminal cases of trial. And I think there's a clear error. The judge has to make the reasons for shackling on the record. Not only did the judge not give any reasons, the judge expressly deferred to the officers. And the judge said, oh, we'll get to their discussion. And we said, you know, he argued a motion previously without shackles and had no problem. The judge said, you're preaching to the choir. He said, you have to talk to those members. Those are the men in charge. The judge is the person in charge. So it's clear the judge abdicated his responsibility and didn't make any reasons on the record. There's a clear error. This is presumptively adjusted to this, and it is in the motion for new trial. And it's presumptively prejudicial, and it still has to and can't show that it was harmless crime Why not? Shackling, it attempts to make the dignity of the justice system. It inhibits its ability to represent itself. But actually, it says you can't work under these conditions. The judge said, you know, that you're the only individual who shackled during the jury selection. Does that make a difference? No. That's a critical stage of trial. This itself wasn't a trial. It was a witness hearing. There was another case, even without a jury, almost in court case theory. There was a bench trial and a juvenile adjudication. It doesn't make a difference whether it's all or part of the trial. This is a critical stage of trial. He was representing himself, and he was an individual in that area. He kept having his leg shackled. He was told to prevent the jury from hearing him. He'd have to keep his feet as long as his leg. And the judge even agreed with him that he didn't need the shackles by saying he was preaching to the choir, which is another reason the state had asked for a retrospective hearing if this court finds there's an error, to send it back and have the judge conduct this hearing years after trial to say whether he needed shackles and put the reasons on the record. And that would be fundamentally unfair here, where the judge clearly says that Reese didn't need shackles. He said he was preaching to the choir. After jury selection, he finally asked the officers, does he need the shackles? And the officers said, yeah, he's going to keep them on unless you order them up. And the judge said, okay, I'll order them up. So the judge doesn't think Reese needed shackles. And having a retrospective finish hearing at this point could allow the judge to change its mind and be fundamentally unfair. And, as you know, the judge shot the prosecutor after trial and there were no incidents throughout the remainder of the eventual portion of trial. Yeah, but in this case, there wasn't a jury telling that this man was already been found guilty of murder. Yes, they didn't want him guilty of murder. But he still has a right to appear in court, presumed innocent of these charges, and to be able to assist in his defense, or in this case, present his own defense as a court-suited defendant, and to not appear. But why is this not hapless there? If the jury already knew he was guilty of murder, and there was only one jury that saw him in the shackles, why is this not hapless there? Just knowing someone who has been convicted of a crime of being a murderer doesn't necessarily indicate the nature of the threat. This may put them in fear if they become aware of his shackles. But I'm just saying, didn't one of the jurors, the jury in question, didn't their juror say something like, well, it didn't surprise me that he was shackled because he has a murder conviction. One juror said that. What did that juror say? That, in my judgment, she didn't see the shackles, but she saw the curtain, and she said she could presume something was amiss under the curtains, and he also had recent behavior because he expressed some belief that jurors may have seen this. And she also said because, well, she thought he had been, at that point the evidence told her he had been convicted of murder and discharged. And she said that her group thought because he had been convicted of murder that there was this curtain up around him, and she didn't know what exactly was happening. Didn't the Supreme Court affirm a lower court's decision to shackle, and that is very important here, in People v. Laws, where the court didn't actually articulate its reasons for having the shackles? I'm not sure the reasons for the affirmance and whether it was observed there or not. But, again, this was a critical stage of trial, and not only was the individual assisting in some cases in a particular way. But it was inhibited in any way during jury selection. You don't walk around and rant about the jury room, and there's no need for that. So how do you say it was inhibited? I think, by nature of knowing that you were shackled, it would be a distraction, but also he was told not to move his legs if he didn't want the jury to hear it. So he acted uncomfortably for hours and hours if he wanted to prevent the jury from becoming aware of his shackles. And we know that these moral triggers are especially lurking. In this case, if it had continued shackles, when he had just recently been, you know, made this effort to escape? Well, the charges were still to be brought back to him, but it's clear the judge didn't think he needed shackles. And, you know, a lot of factors go into a decision, whether there are any recent threats, whether there's, you know, friends or family, or a risk of mild action in the courtroom, any recent behavior, and he had behaved perfectly fine. Can we presume from the facts of this case why he was shackled in the first instance? No, the court has to make a record. The conference has to make a record for this. And the conference record here actually is a record that he didn't need shackles. And before. And before. Before, when we said, when we asked for the shackle off and said he argued a motion without shackles and had no problem, the judge said, you're preaching to the crowd. Is the premise in this case presumed, or do you have to actually show it? The premise in this presumption is presumed, and the state has to show it's harmless beyond a reasonable doubt. Okay, so it is subject to harmless beyond a reasonable doubt. Yes. I thought you said it wasn't. No, it's not just a harmless beyond a reasonable doubt. And I don't think the state can show that. But based on the evidence, you don't think the evidence was overwhelming? No, I think the evidence is close. That is, I think, What were you really trying to escape? Well, he presented a necessity defense, and a survival defense, so that was for the jury to weigh. Which they obviously rejected. Well, yes, but in many cases, in a field where the jury has rejected the defense, that doesn't necessarily mean the evidence wasn't close or it doesn't mean that the state can show the evidence was overwhelming. Didn't he himself say he was trying to get out of jail because of his recent conviction? No, he said he was trying to get out of jail because he had been beaten by an officer, or he had been injured. Right, he needed to get out of jail. Yes, and that's a survival necessity defense. The Lawrence Supreme Court has held him under to a world threat for prison violence, and the third district in 2000, in a case that isn't in a brief, but it's called Musgrove. Weren't the injuries he sustained from a year earlier? Yes, the meeting was a year earlier. He said he was receiving continued threats. I believe threats from agreements, and he was still holding out hope that in the other case that he contained a prison sentence, he would be found not guilty, and waited to try that. I have one last question. Do you think because someone presents a defense, a necessity defense or whatever, self-defense, that that automatically means that the evidence is not overwhelming? No, not automatically. He presented an underrated necessity defense. There were pictures of his injuries, which corroborated his necessity defense, and it's been held to be a viable defense. So you think that the status of the law is that if somebody's in a jail and gets beaten, and is subjected to threats, that everybody in the jail can just escape, just leave, and that it's not a crime? It depends on the level of necessity. The Supreme Court has held that a need to escape from violence in prison can be presented as a necessity defense. And here, we've presented as underrated. What was the level of the violence in the case that you're citing? In Unger, the Supreme Court did an Unger that was just threats for violence. I don't think the defendant had been beaten yet. In the 3rd District case of Musgrove, there were then, excuse me, those threats of violence and sexual activity, and I think non-pro-sexual sex acts. In the 3rd District case of Musgrove, that was threats of violence from other prisoners, but not actual complete violence yet. Wouldn't your better argument be here that the judge did talk about the shackles and then he found that the shackles weren't needed? He should have asked about it earlier. He certainly should have asked about it earlier. At the point when he was asked about the shackles, that was before the jury came in. Instead, for some reason, the judge didn't believe he needed the shackles. Then there could be no argument if the jury was stated. I'm sorry? I said if he asked earlier, there would be no argument whether the jury was stated. If he asked earlier, the judge knew there were many reasons for shackling the record, or removing the shackles. Here, it's clear the judge knew whether he removed the shackles. Instead, the judge simply said to talk to the officers and said that they were the people in charge, which is clearly in their groups and several cases following groups. I'm just through your softball, so all you have to say is yes. The judge is either independent, acting pro se, persistent, that he was ultimately able to get the judge to say that I agree with you and I'm going to take him on. On the second day. On the second day. Well, even on the first day, at the end of the first day, the judge agreed and said, I'll work him off tomorrow. Okay, in the end of the first day. Yeah. But it was his persistence that got it done. Yeah, because he was not responsible representing himself with shackles. It was inhibiting his ability. If this was a remand for neutral on the shackling, it should be because the excessive or irrelevant information about his prior conviction went to the jury in a certified copy that showed 26 charged counts of murder. It showed conviction on interim on seven counts and a sentence on two. It showed charges for aggravated kidnapping or attempted aggravated kidnapping where he was even acquitted. Well, we really know that that went to the jury room. I mean, there's two points where they're speaking. One, the state's attorney says, this is what we're sending back and we're not sending back the certified copy in some house. What was it? The grand jury transcript. The grand jury, thank you. And then the judge goes, yeah, no grand jury transcript, everything else. And so from that, you're taking that we should decide that even though the state said we're not sending it back, that they send it back? Is there some other evidence that that went to the jury room? Is there something else in the record that can lead us to that conclusion? No, we just have the judge saying, in response to the state's adjustment of what goes back, the judge says everything but the grand jury goes back. And I think when we have a judge saying what goes back and what doesn't, I think we have to presume that other parties in the court are following that as always. And especially where this is evidence that could help us do it, there would be no reason for them to want to keep it out. Do you think that certified copies of convictions normally go back to the jury room? I'm not sure. And here there's a suggestion that there was no certified copy that went back. They introduced the certified copy of evidence, but there's no real suggestion that that went back. Well, I think the suggestion is for the judge that it goes back. The judge says everything goes back. So you want us to reverse a conviction based on a suggestion? Based on the... Based on the... If you had a deputy sheriff coming in with an affidavit, saying, yeah, I took this back to the jury room, or you had some jury saying, yeah, I read the certified copy, or you even had defense counsel, when the stuff comes out of the jury room, saying, hey, this wasn't supposed to go back, but all you had is a judge possibly misspeaking and just saying, yeah, after the state says, we're not sending this back, we're supposed to reverse a conviction based on the fact that it might have gone back. I think if we're going to presume that the judge misspoke about to the party seeking to commit the code that that was a misstatement or a typo... You don't have any evidence that it went back, do you? I have the judge's order that it goes back. No, you don't have any evidence that it actually went back? No. Okay, thank you. Actually, outside the presence of the jury, I mean, this is in the record, the prosecutor clearly told the court that all of the state's exhibits would be sent back with the jury during deliberations except for the grand jury transcript and the certified copy. That's what the assistant state attorney said on the record. Right. And then the court... And then the grand jury in response says everything went back except the grand jury. Everything includes the certified copy. All right, well, the state's the one that was seeking to have the exhibits go back. I'm just saying, I think the record says so. Well, thank you. The court has told me that you've gone on too long, but that's really all I'm saying. Do you have anything else? No, that's all I have to say. We'll hear from you again. Good morning, Your Honor. Assistant state attorney, Annette Collins. As to the first issue, it's obviously our position that this court decided the McCarter decision incorrectly. It's our position that the armed robbery statute and Strickland should not be the sole interpretive guide for a different statute. It's very telling that the defendant comes before this court today and alters his position. It's different than the position that he provided to this court in McCarter. If you'll recall, in McCarter, the defendant pointed to Strickland and said that Strickland means that the victim has to be outside the car. In fact, this court's decision in McCarter specifically references the defendant's argument in that case. And that was that in order to take a car from another, a defendant must physically remove the owner from the car. That statement, as Justice McBride noted in both Cooksey and in her concurrence in McCarter, was the interpretation of Strickland. However, the defendant deviates from that interpretation today. And that calls into question the fact that McCarter felt compelled to follow Strickland. If Strickland says that the victim has to be removed from the car, and we don't follow that position to the letter, then we are not following or being compelled by the Supreme Court's decision. In fact, the distinction the defendant makes is no different in absurdity than the distinction that was made in McCarter. What did Strickland tell us about what taking means? Strickland said that there was no evidence that, quote, the property was ever taken from the victim. And Strickland also said, quote, the automobile was never removed from the victim's actual possession. The key in Strickland's argument is that the victim was still driving the car in that case. No. Who was driving? Oh, the victim was in the car. Yes. But remember, that language was interpreted by the defendant and in this court in McCarter as the removal of the victim, because that's the way the robbery statute was interpreted. The reason the defendant has shifted is because, no doubt, he's aware of a multitude of cases where the victims are still in the car. And he also understands that his interpretation, or at least the interpretation of McCarter, the very narrow interpretation of their hijacking, is absurd. The very act of hijacking, which is putting a gun to somebody's head and forcing them to drive, is actually removed from the reach of the statute under McCarter. And likewise, the more serious and dangerous situation where the victim is still in the car is also excluded from the reach of the statute under McCarter. Now, that's why the defendant is trying to draw the line. So the line is no doubt this. Isn't this correct generally? And I agree with you that it's, and the court cases even say that. That it's a highly dangerous situation when the victim is still in the car and is under threat of some weapon. But bringing it back to Illinois, what is the state's response to the, well, what do we do with the fact that the legislature used the same language that was used in the robbery statute? And that the robbery statute was interpreted to mean that there has to be actual dispossession. And then the legislature, and we're supposed to presume that the legislature knows about all these cases and that there's rules of statutory construction that should lead us to say, well, if they know that taking, the Supreme Court has said that taking in robbery means dispossession. And they use taking in the car-jamping statute. How do we reconcile that with your position? My position is... How is it different? My position is that Strickland isn't the only guy. We have to take a look. If we're going to look at the legislative debates, the legislature never mentioned Strickland. Never actually talked about armed robbery. What they did talk about was the federal car-jamping statute. So the legislature was not expressly concerned with Strickland when it enacted the vehicular car-jamping statute. The legislature was expressly concerned with the act of car-jamping as the federal courts had already recognized for years. The other thing that's significantly... The language is significantly different in the federal statute because it actually encompasses the offense of attempt. It's a very broad statute. Taking includes either the actual taking or an attempt to do so. Right, but the cases where the victim is still in the car or the cases where the defendant is putting a gun to the victim's head are not considered attempt cases in the federal statute. I understand, but you're asking us to use federal courts interpreting a federal statute that is not the same as our statute, whereas here we already have an Illinois Supreme Court decision that interpreted the armed robbery statute and then the legislature enacted a piece of legislation knowing very well what taking means and then they use that language when they create legislation. So what do you say to that principle that when the legislature is aware of a previous interpretation by the Supreme Court and then they take that language and use it again? You're saying that, no, they really meant the federal statute. I mean, I'm not aware of any case that actually says what you're saying, that we should interpret Illinois law as federal courts have interpreted a federal statute under strict statutory construction. I'm not aware of a case... That's not what I'm saying. What case would you say... You're suggesting what you're saying, that we look to the federal courts to interpret our statute when it's not the same language. I'm not saying that that's all that we do. I'm saying that it's one of a piece in interpretive statutory construction. And while the word taking maybe looks at similarly, that is not the only thing that we look at, because we are not... Let me ask you this one question. Do we actually look to statutory principles of construction when our Supreme Court's already interpreted a language? Do we do that? Yes, absolutely. It says that we do that when we already have cases... Every case that says that we can't interpret a statute to result in an absurd scenario, and that's what's happening here. We can't forget that. The title of this offense was not armed robbery of vehicles. It's vehicular hijacking. If they wanted carjacking to be the same as robbery of a vehicle, they didn't need to pass the statute. They only needed to pass a statute that heightens the penalty for armed robbery of a vehicle, because that's all really... So it is an armed robbery of a vehicle. No, it's not an armed robbery of a vehicle. I'm talking about... This is about hijacking, Justice McBride. And because it's a hijacking, and because the legislature used the term hijacking, that is a term separated with specific meaning. What is it? Is it statute? Did the legislature define it? No. And not only did the legislature not define it, the legislature never defined the term taking either. And the legislature never made a distinction between a defendant behind the wheel or in passenger's side or in the back. The defense argument today is somehow taking control of the wheel is the operative fact, and that is not found in the Strictly. So he's even deviating from this court's reliance on Strictly and from McCarter. Likewise, the difference between a hijacker taking the wheel and putting the gun in the passenger's side, that distinction isn't even found in the statute. So I would suggest to your honors that what I would criticize for doing, looking beyond Strictly, is exactly what the defense counsel is doing. Somebody's criticizing you, Counsel. But... It's not like we debate. Yes. That is exactly what defense counsel is doing in this case when he redraws that line. So what would you like us to write? I would like this court to write that Strictly was an armed robbery decision. Armed robbery is not before the court. While the language is similar, the offense is distinct. Armed robbery parked out vehicles and the vehicular hijacking statute... You have to have elements to be able to write what vehicle hijacking is, and what should those elements be? Should it be control, taking control of the vehicle? Yes. All right, well, then if I'm sitting in the passenger's side and I grab somebody's wheel, am I hijacking their vehicle? Not necessarily. Well, then we can't make it all in control, can we? No, because you haven't taken the vehicle completely from the victim's control. You're not threatening them and making them do their bidding. All right, so what are the elements? One of them would be control. What is the other elements? The other elements would be the hijacking. And the hijacking is they're supposed to go to a different destination and use it for their own purposes. From the hijacking definition. What definition? The dictionary definition. Oh, all right. I thought you were trying to incorporate some language the legislature gave us when they created the statute. All right. So you're suggesting that in addition to the case law that we already have and the limited legislative debate that we should take the dictionary definition of hijacking and incorporate it? These are all statutory construction principles, Your Honor. This is not a dictionary. Then you can look at the dictionaries, though. There's a time and a place, isn't there? Under the definition of statutory principles, when you start looking at dictionaries. Your Honor, strictly... I think there is something. Well, we can... Okay. Well, the language of the statute is ambiguous. We use all tools of statutory construction. All right. All of those tools are at the same time. No, Your Honor. We do have ambiguous language because we are both fighting over the term takes a vehicle. Our legislature has not defined takes. Well, a lot of courts have. A lot of courts have gone over the meaning of this. Yeah. I agree. ...what they think taking is. And they said, you know, in strict legal... He may have exercised some control. It wasn't the take. Is that what you're trying to say? Yes. I do, Your Honor. Does the federal statute in its breadth change things or not? No. It doesn't. So you're not saying that having a statute that actually allows an attempt to be part of that method is really the same as our statute? The attempt only deals with those cases where the takings have not been completed. In a situation where the offender spoils, the offender never gets in the vehicle, the offender never actually gets control of the vehicle, those would all encompass the attempts in the federal statute. The federal statute would add to the block. The statute also includes the events of the past. So there's no more attempt to separate them. But in the federal statute that you want us to look to and use those cases, the robberies and their hijacking statutes actually include under its umbrella an attempt to take. That's the same, essentially, as taking. Is there a station without a relevant difference in this case? Because when the legislature enacted that they're hijacking, they specifically chose not to make it armed robbery. They specifically referenced the federal crimes of hijacking as their guidepost and are the existing vehicular hijacking type of crime. And not only that, while they borrowed language from attempt, or excuse me, armed robbery, they created an entirely different offense and they entitled it vehicular hijacking. The combination of all those facts leads to the conclusion that it would be absurd to suggest that in order to commit vehicular hijacking, the victim has to be completely outside the car. That's what Strickland says, if we take that as the only control over the vehicular hijacking statute. And that's what Ricardo says. The defendant shifts the line, but his shift doesn't come from Strickland. His shift doesn't come from Ricardo. The federal statute actually even has more than the intent. So there's more. Actually, under the federal statute, you have to establish that the person had an intent to cause death or serious bodily harm for a case of motor vehicle that has been transported, shipped, or received an interstate or foreign car from the person or presence of another by force and violence or by intimidation or attempt to do so shall be. And then there's the various penalties. So federally, it's a very different statute. So I'm not sure I agree with this. Let's look at the federal statute when the language that the Illinois legislature used When our Illinois legislature referenced the hijacking statute in their debates on our vehicular hijacking crime, they noted that it was distinct and they pointed out that you have to have firearms committed in the federal sector. They weren't going to do that in Illinois. And they didn't do that. But as far as the other distinctions in the federal statute, those are not really relevant distinctions for the question before this court because the only question before this court is how do you take a car? Is taking a car different under vehicular hijacking? And our position is you can take a car. You can hijack a car. Take it from the control, which the defendant has conceded is the operative dividing line, the control of the vehicle. You can take control of the vehicle by putting it under somebody's house. Well, there's something unique about a car, isn't there? Absolutely. You know, you can't... If you say, well, what's new to the robbery statute? Well, yes, but you know, cars are different than wads of money, for example. Absolutely. You can rob someone of a wad of money by taking it from them. But how can you take control of a wad of money without taking it from them? But a car, you can actually take control of without taking it from them. And that's why these are not, you know, comparable situations. And that's been our position all along. And... Cars are unique. Cars are unique. And that's why there's a new statute. Yes. It's a different statute. And that's why the statute is quite different. Let's talk about sharing. Okay. The shackles in this case involve foot shackles. And the only time the defendant was wearing those foot shackles during the trial proceedings was ward year. Earlier, he had handcuffs that were chained to his shackles. The court, at the defendant's request, allowed him to have those off during some of the earlier pretrial court dates. When the defendant asked to have his hand cuffed off, he said, I don't need the shackles off. I can represent myself. I can write. I can make arguments with the handcuffs off. So, now today when the defense counsel is suggesting that the shackles imputed defendant in his defense, that's simply incorrect. And that's contrary to the very language the defendant used in his earlier request. And in this case, defendant's suggestion... Well, should we really be limited to the defendant's statements and his requests? I mean, doesn't the case law tell us that, you know, there has to be a booze hearing? There has to be. And there was one. And one of the other things that... So, you're going to need to address the lack of a booze hearing. And what we do about that. I mean, do we say that that's error, but it's harmless error? Is that what you're saying? I'm saying... Number two. Number two. Number two. See, now you made me forget number two. First, there's the booze hearing. Second... Well, it'll come to me. Go ahead. Okay. It might be that the allegation that the court is leading it up to... Yeah. The Supreme Court has told us, don't ever delegate this responsibility to the Department of Corrections. And so, at least for one day, it looks like the trial judge may have done that. Although it seems that he later took it back. If you take a look at everything the trial judge said, and remember, this issue of the shackles occurred over multiple court dates. We have to take a look at it in its entirety. There's actually no set formula for how a booze hearing is conducted. It's just a matter of having the defendant be able to put his information before the court, the court able to get some information from the guards or whoever the shackle defendant is in the first place, and for the court to make its own determination. Those are sort of the components of a booze-type hearing. Did the court conduct a hearing here before the jury selection? Your Honor, there was no formal hearing in this case. So, was there a way to do that? Well, not technically a formal hearing. Well, that's not called formal. Okay. Well, the reason I'm making the distinction between formal is because there was no distinction, there was no sort of introduction, okay, today I'm going to discuss the shackles. The shackles were brought to the court's attention and the defendant made his request. At that point, the court discussed with the defendant and discussed with the jail guards what was going on, why the shackles were on, and the court said, on multiple occasions, I'm going to leave them on. Now, we can't... Yes, I really think so. Didn't he say, first of all, Bruce says it's not enough to just discuss that they're shackles. It's not a booze hearing. I mean, if you want to say there's something such as an informal booze hearing, but it's not even that. It's just, hey, Judge, I got these shackles on, and the judge goes, yeah, I know, but that's up to them. I mean, isn't that what he said until finally he said, can we take these off, and then they said, it's up to you? You know what, I think that's an over-exaggeration. I think that's what defense is focusing on, but we have to look at what the court said on multiple occasions. At one point, he told the defendant, at the appropriate time, I will probably allow that, but right now, we're just getting a date, and as far as I can see, you're only going to be here for another few seconds. So in other words, from that statement, the court is taking into consideration the type of proceedings, and we can't forget that this was an escape trial. Every single case that we have dealing with a booze hearing, none of them involve escape trials. In fact, the language in Booth itself, and even Perry Allen and Box, all make the distinction between a non-escape trial, as in most cases for other offenses, and a trial for escape. In Booth, the court said there's nothing to suggest that the defendant had escaped in the past or even intended an escape. There's nothing to suggest violent behavior before or during the trial. That is the opposite of what we have here. Judge Wattas was well aware that this was a trial not just on any escape, but a very violent escape, and defendants, through his self-representation, have exhibited some irrational and combative behavior as well. Now, Judge Wattas did not reference specifically those two events and facts, but I would suggest to you, Your Honors, that that was at the heart of the decision. Judge Wattas made the decision himself. He wasn't deferring to the jail guards. Judge Wattas knew from the very beginning that the jail guards had also reminded him that it was his decision to make. Well, is there any information in the record earlier about the shackling on another date or something like this? One defendant was doing discovery completion. He asked the judge, can I get these shackles and these handcuffs off? I can't move around. And the judge told him, you know, you're only going to be here for a few seconds. We'll talk about that later. Then, the defendant, on another court date, on a couple subsequent dates, asked the court to remove his handcuffs. At the time the defendant asked the court to remove his handcuffs, he said, the shackles are fine. They don't give me any problem. I just need to be able to use my hands so I can write. Now, it wasn't until your year where defendants started objecting to the shackles. And when the court told defendants, don't worry, nobody's going to see them. You'll still be able to sit at council table. In fact, the state attorneys are at that council table too, and they can't move or get up because they're covered with a table, kind of a cloth over the table too. Let me ask you this. Our standard of review here is abuse of discretion. Is that correct? Correct. And the judge, he mentioned, he talked about the shackles during jury selection and decided during jury selection to take off the shackles. Is that correct? The defendant is the one who … Is that correct or not correct? No, that's not correct. The defendant brought out the shackles at jury selection. The defendant himself was adamant that he wanted to ask the jury about his restraints. And, in fact, the judge had to remove some of the veneer panel from the courtroom because the defendant wanted to talk to one of the veneer persons about his shackles. And when the judge finally allowed the defendant to do this and brought that veneer person back into the court, that's the veneer person who, when the defendant said, did you see my shackles, did you see my restraints? She said, no, I didn't. But now that you point out my issues … Then the issue is there, right? Then the issue is there. Then the issue is there that the defendant brought to the jury. But the jury, the veneer person who reportedly saw the shackles, also told the court and defendant, I don't have a problem with that. The judge figured because this was an escape and he's got the … Why did the judge have decided all that before the jury selection? The judge did decide during the jury selection that, prior to the jury selection, he had allowed defendant's handcuffs to be removed. He kept the shackles on because, and again, it's implicit from this case that this was an escape case. So the judge was going to maintain a level of restraint on the defendant. Didn't he say somewhere during the jury selection, does he really need the shackles? Didn't he say that? The judge was talking to the guards at one point. And he said, does he really need the shackles? And the guards told the judge, it's up to you. And the judge said, okay, I'll consider removing the shackles, the leg restraints, during trial because at that point, that's when the defendant may need to stand up and move about the courtroom. But prior to that, the defendant did not do that to conduct his defense. Shouldn't the judge have decided all that before the jury selection? Not necessarily, Your Honor. Do you think somebody can get a fair trial when they walk in with shackles on? Absolutely they can. In America? Absolutely. Absolutely. Not only did the U.S. Supreme Court say that Terry Allen was a stun belt on the defendant. Yeah, but those were people who exhibited certain things. No, they were not. Those were not escape trials. No, they weren't escape trials, but those people had exhibited where they couldn't control themselves. Not necessarily, no. In fact, the error or the prejudice analysis in Terry Allen and in Boss referenced the fact that the evidence was overwhelming, there was no need for the shackles, no need for the shackles, but the evidence was overwhelming, those shackles did not impede the defendant in conducting his defense, they did not bring disrepute to the judicial system, and because of that, there was no prejudice in the absence of a bruce hearing. Well, I'm going to steal one of Justice Gordon's favorite questions. How do you want us to write this? Do you want us to write this and say, Bruce doesn't apply because it's an escape case? Do you want us to say he actually exercised his discretion and made a determination that by balancing things, I'll leave him on during jury selection, I'll take him off during trial? Do you want us to say it's an error? If it was harmless, what do you want us to say? I'll start with what Justice Gordon mentioned. This is an abuse of discretion, and under the circumstance here, the court did not abuse its discretion in deciding the shackling was appropriate and removing them only when it became necessary for the defendant to conduct his defense. The judge's decision-making in this case was completely rational, and we can't say that the judge didn't know that it was his decision. He knew early on it was his decision. He may have said that you're preaching to the choir. He may have said that to the defendant, but that does not necessarily mean that the judge abdicated his responsibility. And frankly, Your Honors, even if there is error, even if there should have been a Bruce hearing conducted in this case, that error is harmless beyond a reasonable doubt for the very reasons that we've discussed. Why? Because the evidence is overwhelming in this case. There's nothing that discloses the defendant's presumption. Counsel just told us that he had a very viable necessity defense, and there's case law that backs it up, and he had real evidence that he had been beaten in the jail, and he felt that for his safety he needed to get out of jail. Defendant? So why is the evidence close? Not close. Okay. It's not a matter of being close or not because this is a preserved error. So the evidence is overwhelming. That's our position. Now, as far as defendant's cases, those cases involve serious harm coming to the defendant via rape and, again, requests for instructions. They're not about whether the offense was proven. Just as this case, the giving of the instruction is on slight evidence, and there's clearly only slight evidence from defendant, and it's also incredible evidence, that he was acting under a necessity. So just because an instruction is given doesn't mean that there's actually a viable defense or that that defense makes the evidence close or anything short of overwhelming, and that's our position here. I don't know if it's fair to ask you this question or if it would be within your knowledge, but has that defense ever succeeded? I have not seen a case where the defense of necessity escaped from prison has succeeded. Obviously, there's defense of necessity in other constructs and circumstances, but not escape from prison. I'm unaware of one. All right. Anything else possible? There were other issues brought to this court's attention, the admission of defendant to prior conviction. Let's talk about that. Okay. Go ahead. It's our position that the record does not show affirmative error. All that the record shows is a possibility. Defendant's argument is based on speculation. Here, the state attorney has control of his or her exhibits. The choice of the state attorney not to present any evidence in their case in chief rarely would be overrided by the court. This is his mission as the state's evidence. So in this case, when Judge Wattis mentioned that the grand jury transcript wouldn't go back and failed to mention that the certified copy wouldn't also go back to the jury, that was just a missing word. It doesn't mean affirmatively that the – Isn't the state attorney saying that they weren't sending those two items back? Isn't that clearly enunciating that in the record? Absolutely. There's no evidence that it actually went back to the jury. No. There's a quick reference in the appellant's brief that they have a problem with the fact that during the cross-examination of the defendant, he didn't – he was asked in an effort to show how much time he was facing, he was asked, well, weren't you also, in addition to the murder, wasn't there also the finding of the additional allegation that you were discharging a firearm causing death? And that he kind of heads down that, he said, oh, was I convicted of that? I didn't know that or whatever. And then they say, well, it was unfair to argue that because it was never proved up. What's your answer to that? My answer to that is, defendant's statement, here's the question, I'll quote, the prosecutor asked him whether the jury made an additional finding that when you committed that murder, you did so by personally discharging a firearm that approximately caused your victim to die, right? And the defendant answered, oh, yeah. It was only after that the defendant backed off a little bit. So it's not actually a correct interpretation of the record to say that we didn't put it before the jury. We asked the defendant, we got an answer, and then he hedged it. As a result, it was fair game. It's in the certified copy conviction too, isn't it? I mean, doesn't the certified copy conviction say every company was convicted of it? Yes, it does. And even if it didn't go back to the jury, it's in evidence, right? It's in evidence. Correct. Clearly, the defendant raised the specter of his prior crime with his necessity defense. The time that he was facing was completely relevant, particularly the minimum 45 years to life term. And that's because that was the impetus for his escape, not because of some necessity due to a beating a year ago. And for that reason, there was no ARAD admission of that evidence. There are several other issues that if this court does not have any questions on, I will conclude and say that none of the defendants' claims before this court have individual merit. We ask that this court firm defendant's conviction and sentence. Thank you. Thank you, counsel. Mr. Harris. I will leave it at that discussion. As I put it in my Department of Corrections, all you have to do is talk to the men in charge. If you can convince those three men you're preaching to the choir, those are the judge's words. The judge, honestly, was not exercising any discretion whatsoever until after jury selection. And there was discussion of jury awareness, which, again, the ARA doesn't depend on jury awareness. The count that mentioned one juror who was questioned who didn't see him, the second juror did see him. So this 50 percent rate indicates other potential jurors that they were following through and going through the jury selection process may also have seen him. Even if this court finds that the ARA is harmless regarding the escape count, it still is not harmless regarding the other counts where the evidence is insufficient on invasion and hijacking. And on the murder count where the jury sent a note asking what property it had to be that was taken, and there was the charge that he reached for the gun and he testified he reached for the keys, and the juror clearly then was trying to take the guy and found him guilty of robbery after they were told it could be any property. So the evidence is still close, if not insufficient, on the other three offenses. Regarding the first issue, I apologize if I wasn't clear on my options, but to shift the line from Strickland and McCarter. But in response to the safe cases, even if this court is persuaded to look at the federal cases, there's still a line that can be drawn to distinguish those cases where the defendant assumes physical control, even if the victim is still McCarter. So that's not required to look at the federal cases interpreting federal law, other than Strickland and McCarter or direct men points interpreting Illinois law. Do you know offhand if the robbery and the vehicular hijacking statute are both the same class in Illinois? I don't believe armed robbery and illegal vehicle hijacking are both the same class. I believe that hijacking involves higher penalties, and some specific higher penalties for certain classes of victims that aren't in the armed robbery statute. So in approving the statute, the legislature took the same lines that have been judicially construed and applied it to the vehicular hijacking statute. The state argues based on its own interpretation of the title, hijacking, but the legislature defines hijacking by relevance, and the title doesn't necessarily control those. There's something to look at that the title matters, though, isn't there? It can be part of an interpretation of an ambiguous statute, but we don't have any duty to it. The legislature used the identical language from robbery after it had been judicially construed, and just because the state thinks hijacking should mean something it doesn't in Illinois, it just doesn't control it. There's a derivative in the federal statute. It encompasses more than just actual physical property. It includes possession and contentment of it. So the elements of offense can differ from a common understanding of the title. Regarding the last issue, the certified copy of conviction, if the state wanted to impeach the record, it was its burden to come in and say that. The judge's statement that everything goes back was not followed. I don't think the record typically indicates or narrates a sheriff picking up evidence, picking up exhibits, and carrying them to the jury room. All we typically have is the judge saying what goes back and what doesn't. If the state wanted to impeach that record and say, no, no, we didn't send anything back, but the judge said it was going back. I don't know if you can necessarily make that statement. There was a well-covered case right down the street here in the federal court a number of years ago where it was discovered during jury deliberations, it was discovered that a whole cart full of evidence that was not supposed to go to the jury went to the jury. And there was a mistrial as a result of that, or there was no mistrial, or what have you. But there was actual evidence brought to the attentions of the court that documents that weren't supposed to go to the jury room actually did go to the jury room. So you can't say that this is the only way. It could be a stronger case, but it's not necessary. When we have the record of the judge saying that the state could have sought out an aggrieved statement and passed it without sending it to the court, or not to get it from attorneys saying that they withheld something, that the judge said it was going to go back, but they didn't seek to impeach the record, and the record is the judge saying it goes back. And it painted a picture of a mentally unstable person shooting 26 people with a firearm in conjunction with evidence supplied in the closing argument that it involved a firearm. So for these reasons, I would ask the court to reverse the conditions and get a clear version so that everyone can agree that on the ground reading, on the case of amnesty, reverse that condition, and remand the new firearm case. Thank you. All right. Well, this has been an excellent oral argument, and we want to thank the parties for their efforts today and for their excellent briefing. It's obviously a very interesting case. It has some nice, juicy issues, and we'll let you know. The case is under advisement. And the court is adjourned.